UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH B. BURTON,

    Plaintiff,                        Civil Action No. 11-cv-14768

    v.                               District Judge Stephen J. Murphy, III
                                   Magistrate Judge Laurie J. Michelson

J. PARKS, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
HARRIET SQUIER, JOHN KEARNEY, MARVIN KEELING AND MAURICE POTTS'
MOTION FOR SUMMARY JUDGMENT [91]**

Plaintiff Kenneth B. Burton, a prisoner incarcerated at the Central Michigan Correctional Facility ("STF"), brought this 42 U.S.C. § 1983 civil rights case alleging that ten MDOC defendants violated his First and Eighth Amendment rights by denying adequate medical care for his back and bladder pain. (Dkt. 1, Compl.) On February 2, 2012, District Court Judge Stephen J. Murphy, III adopted this Court's recommendation to grant MDOC Defendants Cannefax, Bidlack, Bitler, Peters, Stieve and Parks' motion for summary judgment. (Dkts. 17, 46, 59.) On March 6, 2012, Plaintiff filed an Amended Complaint. (Dkt. 37, Am. Compl.) On July 13, 2012, this Court filed an Amended Report and Recommendation to clarify that the prior report and recommendation pertained only to the MDOC defendants who had joined in that motion, therefore, Plaintiff's First and Eighth Amendment claims remained as to Defendants Squier, Kearney, Keeling, and Potts. (Dkt. 53, Am. R & R, at 1.) Plaintiff also alleged a medical malpractice claim and a tort claim of gross negligence

1

against Defendants Squier, Kearney, Keeling and Potts; however, those claims were previously dismissed pursuant to 28 U.S.C. § 1367(c). (Dkt. 37, Am. Compl.; *see also* Dkt. 53, Am. R & R, at 1.)

Presently before the Court for a Report and Recommendation (Dkt. 5) is Defendants Squier, Kearney, Keeling, and Potts' Motion for Summary Judgment (Dkt. 91). All pretrial matters have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 8.) For the reasons that follow, this Court concludes that Plaintiff has forfeited his claims against Defendants Kearney and Keeling who have adequately established the absence of any genuine issue of material fact and therefore recommends that Plaintiff's claims against these Defendants be dismissed. This Court further concludes that Plaintiff has failed to establish that either Defendant Squier or Potts were deliberately indifferent to Plaintiff's serious medical needs and therefore recommends that Plaintiff's claims against Squier and Potts also be dismissed.

## I.  BACKGROUND

As previously summarized by this Court:

> Plaintiff Kenneth B. Burton ("Plaintiff") alleges that he suffers from "extreme and escalating pain" due to a compressed vertebrae, arthritis, spinal degeneration, bladder abstention and kidney stone formation. (Dkt. 1, Pl.'s Am. Compl. at 18). Plaintiff claims that while he was incarcerated at STF, Defendants Squier, Kearney, Keeling, and Potts failed to provide proper medical care by, among other things, refusing to order an MRI and provide the proper pain medication for him. (*Id.*) As a result, Plaintiff alleges he is using a "black market" catheter that he obtained while in prison "to relieve poisons from his bladder."

(Dkt. 46, May 29, 2012 R & R) (quoting Dkt. 37, Am. Compl. at 1). During discovery, the parties obtained Plaintiff's medical records. (Dkt. 91, Defs.' Mot. Summ. J., Ex. A-1, Med. Rec. (under seal at Dkt. 93).) Both sides rely on the records. They reveal that Plaintiff received extensive medical

treatment for his alleged physical impairments. (*Id.*) In their motion, Defendants summarize this treatment that they provided to Plaintiff over a three year period. (*See* Defs.' Mot. Summ. J. at 2-26.) Plaintiff likewise identifies his medical kites and resulting treatment. (*See* Pl's Mot. Summ. J. at 2-31.)

This undisputed medical evidence shows that Defendant Keeling evaluated Plaintiff's medical condition on 15 separate occasions between January 10, 2011, and March 29, 2012. (Dkt. 91, Defs.' Mot. Summ. J., Ex. D, Keeling Aff. ¶¶ 28-63.) During these visits, Dr. Keeling performed a variety of services including: evaluation and follow-up with Plaintiff regarding possible kidney stones and back pain, prescribed medications (including Cipro, Naprosen, Bacrtrim, Ultram) and conducted medication reviews, administered injections for pain relief, referred Plaintiff to a specialist (Dr. Bomber) regarding his back pain and urinary retention, referred Plaintiff to the Pain Management Committee (PMC) for the creation of a long-term pain relief plan, and educated Plaintiff regarding the necessity of exercise, stretching, a healthy diet, and the importance of following PMC's recommendations. (*Id.*)

The evidence also shows that between November 22, 2010, and April 24, 2012, Defendant Kearney evaluated Plaintiff on nine separate occasions. (Dkt. 91, Defs.' Mot. Summ. J., Ex. E, Kearney Aff. ¶¶ 5-22.) Like Dr. Keeling, PA Kearney prescribed medications (including Tylenol, Bactrim, Micro-K, CTZ, and Nitrostat) and conducted medication reviews, ordered injections for pain relief, ordered testing (including urine cultures and urinalysis), scheduled PMC evaluations, and provided Plaintiff with education to assist with the management of his pain. (*Id.*)

Based on the undisputed record, Dr. Potts treated Plaintiff on two occasions, evaluating Plaintiff's back pain and prescribing him Tegretol for pain relief. (Dkt. 91, Defs.' Mot. Summ. J.,

Ex. C, Potts Aff. ¶¶ 11-22.) Dr. Potts also ordered an x-ray of Plaintiff's thoracic spine and adjusted Plaintiff's prescription during a second visit. (*Id*.)

It appears that Dr. Squier did not physically examine Plaintiff; however, on April 11, 2011, she conducted a review of Dr. Keeling's MRI request, and noted inconsistencies in Dr. Keeling's evaluation of Plaintiff's pain level. (Dkt. 91, Defs.' Mot. Summ. J., Ex. A, Squier Aff. ¶¶ 30.) Due to the inconsistencies, Dr. Squier requested that Dr. Keeling conduct a thorough neurological examination. (*Id*.) On May 19, 2011, Dr. Squier reviewed all of Plaintiff's medical records since April 2011 for lower back pain and found that they were inconsistent. (*Id*.) Dr. Squire also noted that several of Plaintiff's medications could cause urinary retention and that they should be discontinued. (*Id*.) She also directed a shakedown of Plaintiff's cell to confirm compliance with his medications and a post-void residual catheterization to rule out or confirm urine retention after Plaintiff had been off his medications for one week. (*Id*.) Finally, Dr. Squire directed Dr. Keeling to review the article: "Approach to Diagnosis and Evaluation of Lower Back Pain in Adults," and that he re-evaluate Plaintiff's deficits. (*Id*.) If the tests demonstrated severe neurological deficits, Squire directed Keeling to resubmit an MRI request. (*Id*.)

In addition to the named Defendants, Plaintiff was evaluated on 11 separate occasions between February 25, 2009, and February 21, 2012 by various medical professionals for reasons relating to his back and/or urinary retention issues. (Dkt. 91, Defs.' Mot. Summ. J. at 2-22.) Most of these visits were conducted by registered nurses or by nurse practitioners and were for the purpose of prescribing medications, adjusting Plaintiff's prescriptions, ordering laboratory testing or radiology studies, and referring Plaintiff to medical practitioners depending on the severity of Plaintiff's complaints and/or physical condition. (*Id*.)

4

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In order to show that a fact is, or is not, genuinely disputed, both parties are required to either "cite [ ] to particular parts of materials in the record" or "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury,

or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### B. Dr. Keeling and PA Kearney

Defendants Keeling and Kearney have produced evidence demonstrating that they were not deliberately indifferent to Plaintiff's serious medical needs. This discharges their initial summary-judgment burden. Plaintiff has offered nothing in rebuttal. Summary judgment in Keeling and Kearney's favor is therefore warranted. When a plaintiff fails to respond to a motion for summary judgment, this Court must nonetheless "ensure that the movant has met its burden under Rule 56(c) of establishing the absence of any genuine issue of material fact" and that the movant is entitled to judgment as a matter of law. *See Schenkenfelder v. Blitz, U.S.A. Inc.,* No. 06-452, 2009 U.S. Dist. LEXIS 71069, 2009 WL 2496460, at *2 (E.D. Tenn. Aug. 12, 2009) (citing *Miller v. Shore Fin. Servs., Inc*., 141 F. App'x 417, 419 (6th Cir. 2005) (unpublished)); *see also Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

Defendants' motion for summary judgment carefully recounts the extensive treatment that Dr. Keeling and PA Kearney provided to Plaintiff. (Dkt. 91, Defs.' Mot. Summ. J. at 2-26.) As detailed above, between these two medical professionals, they evaluated Plaintiff 24 times over a 29-month period, and offered medical consultation and care on both his back and urinary retention issues. (*Id*.) Both Dr. Keeling and PA Kearney prescribed medications, administered injections for pain relief, ordered testing, coordinated efforts for long-term pain relief, and educated Plaintiff regarding pain management. (*Id*.) These medical records make clear that Dr. Keeling and PA

Kearney have satisfied their burden of establishing that they did not violate Plaintiff's Eighth Amendment rights as matter of law.

Perhaps in recognition of the substantial care provided by Defendants Keeling and Kearney, Plaintiff does not challenge their arguments that they did not violate his constitutional rights. The Court therefore finds no genuine issue of disputed material fact as to Defendants Keeling and Kearney and that they are entitled to judgment as a matter of law. *See Guarino*, 980 F.2d at 405; *see also Celotex*, 477 U.S. at 317 (non-movant should be dismissed when they fail to meet their initial summary judgment burden); *Edwards v. Tennessee Valley Auth.*, 255 F.3d 318, 322 (6th Cir. 2001) (reiterating that summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).).

### C. Dr. Squier and Dr. Potts

#### 1. Dr. Squier

The essence of Plaintiff's complaint against Dr. Squier is that she was deliberately indifferent to his serious medical needs by refusing to provide treatment, most notably an MRI requested by Dr. Keeling. (Pl.'s Resp. Br., at 13.)

Dr. Squier provides a supporting affidavit indicating that she reviewed Plaintiff's entire medical record. (Dkt. 91, Defs.' Mot. Summ. J., Ex. A-2, at 179.) More specifically, Dr. Keeling submitted a first 407 Request for an MRI on March 30, 2011. After reviewing Plaintiff's file, which included a normal February 9, 2011 x-ray of the lumbar spine, Dr. Squier

> noted that there was an inconsistency in Dr. Keeling's evaluation …
> [and] requested that Dr. Keeling conduct a thorough neurological
> exam including gait, station, appearance, reflexes, motor, sensory,
> rectal muscle tone, for any 407 resubmission concerning the back
> pain … A thorough neurological examination by the onsite physician
> will identify physical deficits … Up until Dr. Keelings's [sic]

> examination of March 30, all prior work ups by Dr. Potts and PA Kearney were within normal limits and did not exhibit the objective symptoms of severe back pain or injury that could cause urinary retention. This did not mean that Dr. Keeling was in error—a patient's condition may not remain static—but that I wanted additional information …

(Dkt. 91, Ex. A-2, Squier Aff. ¶ 30.) Dr. Keeling re-submitted the 407 Request on May 5, 2011. (Dkt. 91, Ex. A-1, Med. Rec., at 189-90.) On May 12, however, R.N. Bidlack could not discern any reduction in Plaintiff's range of motion, no weakness, and he had a normal gait. (*Id.* at 196.) Dr. Keeling submitted another 407 Request on May 19, and within two hours of the request, Dr. Squier noted:

> I had reviewed the medical records concerning the many evaluations Burton ha[s] received since April for his lower back pain, and they were inconsistent … Burton was not demonstrating in Dr. Keeling['s] examinations the kind of symptomology that would indicate a spinal cord injury severe enough to cause bladder abstention. Burton's PSA was normal (used to identify prostate problems). His KUB was normal. I noted that several of Burton's medications—Tegretol, Pamelor, and Ultram—can cause urinary retention. I directed that Dr. Keeling discontinue all medications that could cause such a condition and re-assess the urinary retention problem. I directed a shakedown of Burton's cell to confirm compliance with medications. I directed a post void residual catheterization to rule out (or confirm) urinary retention after Burton had a week off of the medications. I directed Dr. Keeling to review the article "Approach to diagnosis and evaluation of lower back pain in adults" with attention to physical examination, straight leg raising, neurologic testing, and Waddell's sign to evaluate Burton's deficits. If these tests demonstrated severe neurological deficits, I directed Dr. Keeling to submit another 407.

(Defs.' Mot. Summ. J., at 14-15) (citing Dkt. 91-2, Ex. A-2, Squier Aff. ¶ 38.)

"Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653,

8

660 (6th Cir.1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id.* at 702-03 (quoting *Farmer*, 511 U.S. at 834). If a failure to treat a particular condition would deny the inmate "the minimal civilized measure of life's necessities," it meets this "objective" prong. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). To satisfy the subjective component, Plaintiff must show that the officials in question "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (explaining that a plaintiff "may satisfy the subjective prong of this inquiry by establishing that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'").

The Sixth Circuit has instructed "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976) (emphasis added); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The Sixth Circuit does acknowledge, however, that "[a] claim of inadequate medical treatment[,]" as opposed to a claim of a complete denial of medical treatment,

9

"may state a constitutional claim," but cautions that such claims are generally limited to situations where "the treatment rendered is 'so woefully inadequate as to amount to no treatment at all.'" *Clark v. Corrections Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004). This is not such a case. The evidence, and even Plaintiff's allegations regarding the treatment that he received, make clear that he has been provided careful, extensive evaluation and treatment for his back pain and bladder retention.

The fact that Plaintiff does not agree with the course of treatment provided does not constitute a reckless disregard for a substantial risk of human harm. *Alspaugh*, 643 F.3d at 169; *see also Wright v. Gardener*, 57. F. App'x 666 (6th Cir. 2003); *Almond v. Pollard*, No. 11–1555, 2011 U.S. App. LEXIS 19199, 2011 WL 4101460 at *3 (7th Cir. Sept.15, 2011) (affirming summary judgment in a case involving a prisoner's complaints about the treatment of his back pain, explaining that the prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference." (citing *Alspaugh*, 643 F.3d at 169)). Despite Plaintiff's argument to the contrary, "'[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.' At most, [plaintiff's] allegations describe 'an inadvertent failure to provide adequate medical care' which does not constitute deliberate indifference to serious medical needs." *Humphries v. Smith*, 9 Fed. App'x 304, 308 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 105–07); *see also Thomas v. Coble*, 55 Fed. App'x 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim.").

Moreover, Plaintiff's claim that Dr. Squier should be held constitutionally liable because she did not follow the recommendation of Dr. Keeling to order the MRI immediately rather than take

10

a more conservative approach has been rejected by courts in this Circuit and is incompatible with the rulings in *Lucas* and *Alspaugh*. *See, e.g., Ferguson v. Corizon*, No. 12-11702, 2013 WL 4758196, at *9 (E.D. Mich. Sept. 4, 2013) (no constitutional violation where a prison doctor employs a treatment regime that differs with another medical professional); *Cuco v. Fed. Med. Center-Lexington*, No. 05-232, 2006 WL 1635668, at *33 (E.D. Ky. Jun. 9, 2006) ("Even where a plaintiff's private physician recommends a course of treatment for the plaintiff's condition, a prison doctor's use of a different treatment regimen does not amount to deliberate indifference."); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (same).

### *2. Dr. Potts*

Plaintiff is likewise unhappy with the treatment that he received from Dr. Potts, alleging that Potts was deliberately indifferent to his serious medical needs because Dr. Potts knowingly disregarded his health and safety by prescribing Tegretol, an anticonvulsant medication, for lower back pain. (Pl.'s Resp. Br. at 21.) The essence of Plaintiff's claim is that Tegretol is not appropriate for individuals with chronic back pain, especially for people with cardiac complications and renal failure. (*Id.*) However, Dr. Potts, Dr. Squier and Dr. Keeling all testified that Tegretol is appropriate for chronic nerve pain. (Dkt. 99, Def.'s Reply at 5; *see also* Ex. A, Squier Aff. ¶14; Ex. C, Potts Aff. ¶ 11; Ex. D, Keeling Aff. ¶ 12.) Moreover, numerous peer reviewed studies have concluded that Tegretol has been proven effective for neuralgia (nerve pain). (*See* Dkt. 91, Ex. A-1, Med. Rec. at 145.) In addition, Dr. Potts relied on medical literature that has been reviewed by experts in the field that Tegretol can manage low back pain. (Dkt. 99, Reply Br., Ex. A.) If anything, prescribing Plaintiff Tegretol is a question of medical judgment, and courts in this Circuit have repeatedly held that they will not constitutionalize a claim which sounds, if one exists at all,

11

in state tort law.  *See, e.g., Westlake*, 537 F.2d at 860 n.5.  For these reasons, this Court recommends that Dr. Potts be dismissed.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that  Defendants Kearney and Keeling have adequately established the absence of any genuine issue of material fact, and therefore **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment as to Defendants Kearney and Keeling and **DISMISS** those Defendants **WITH PREJUDICE.**

This Court further concludes that Plaintiff has failed to establish that either Defendant Squier or Potts were deliberately indifferent to his serious medical needs and therefore **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment as to Defendants Squier and Potts and **DISMISS** those Defendants **WITH PREJUDICE.**

### IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

Date: December 9, 2013                                          s/Laurie J. Michelson
                                                                Laurie J. Michelson
                                                                United States Magistrate Judge


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 9, 2013.

                                                                s/Jane Johnson
                                                                Deputy Clerk